UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRAINLIFE LLC d/b/a BRAIN FUEL,<br><br>  Plaintiff,<br><br> v.<br><br>BEEKEEPER'S NATURALS INC. et al.,<br><br>  Defendants. | Case No. 3:24-cv-01389-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on an *ex parte* motion for expedited discovery and email service. (Doc. 12). The Plaintiff filed their motion on June 3, 2024. Finding that the Plaintiff has undertaken diligent efforts to discover physical addresses for some of the defendants to no avail, the Court **GRANTS in part** and **DENIES in part** the *ex parte* motion.

**I.   INTRODUCTION**

The Plaintiff claims that the defendants in this case have infringed on their trademark, in violation of the Lanham Act. The Plaintiff filed the *ex parte* motion currently before the Court alleging that many of the defendants were online retailers from foreign countries that, upon being notified of this suit, would shut down their shops and vanish—as is the *modus operandi* for many of these off-shore infringers.

However, the Plaintiff did not specify which defendants they did and did not have addresses for. Accordingly, the Court called a hearing on the motion. (Doc. 14). At that hearing, the Court inquired what efforts the Plaintiff had undertaken to discover the physical addresses of the defendants. The Plaintiff indicated that they have located many of the defendants' physical addresses, but not all. The Court deferred ruling on the motion and ordered the Plaintiff to file a

1

supplement to the motion detailing which defendants they had addresses for and what diligent efforts they have undertaken in locating the defendants that they did not have addresses for. The Plaintiff filed that supplement shortly thereafter.

## II.     BACKGROUND

Brainlife LLC is a supplement company that makes "Brain Fuel." Brain Fuel is a supplement marketed as helping boost mental performance. BRAIN FUEL, Registration No. 4,067,325. The Plaintiff holds a trademark for Brain Fuel. However, that mark is currently undergoing a cancellation challenge brought by one of the defendants in this case—M2 Ingredients, Inc., d/b/a Om Mushroom Superfood. BRAIN FUEL, Registration No. 4,067,325, Proceeding No. 92,083,527, (T.T.A.B. 2023). M2 initiated that proceeding before the United States Trademark and Patent Office's Trademark Trial and Appeal Board (T.T.A.B.) on October 19, 2023, after they received a cease and desist order from Brainlife. The T.T.A.B. has yet to rule on the cancellation proceeding.

Brainlife has named thirty-five defendants. (Doc. 1). They can be roughly sorted into two categories: manufacturers and merchants. The manufacturers are the defendants making products labelled as "brain fuel" or "breinfuel," and selling them directly to consumers. (Doc. 3). The merchants, on the other hand, are websites or individuals on third-party websites reselling the manufacturers' products. (Id.). There are approximately fourteen manufacturers and twenty-one merchants. All of them sell and ship their products to the State of Illinois. (Id.).

In cases of trademark infringement, offshore merchants will often sell their infringing products in the United States. When the trademark owner learns of that infringement, the mark's owner will send cease and desist letters. In some cases, mark owners will sue these infringers directly. However, either upon notice of the cease and desist, or at the first signs of a lawsuit;

some of these offshore merchants will close down their ecommerce shops and disappear without a trace. *See e.g.*, *Kay v. Individual*, No. 22-cv-3033, 2024 U.S. Dist. LEXIS 42430 (S.D. Ill. Feb. 22, 2024). This most often results in a game of "Whack-a-mole" wherein infringers pop up faster than mark owners can stop them and then disappear when the mark owners attempt to pursue them.

This state of affairs has led to the growth of *ex parte* motions—such as the one here—to obtain the contact and financial information of these merchants to track them down and stop them from escaping. As these merchants often have no physical address, email service has become a common way to serve them.

Brainlife's supplemental motion has detailed the diligent efforts they have undertaken to locate the physical addresses of the defendants. They have succeeded in locating the addresses for some of the defendants, but not others. The Plaintiff has been unable to obtain physical addresses for:

- HHFS-Online
- Healthplusliving
- Wanda's Health and Beauty
- Daily Deals Sales
- Tiendamia
- Todayslifestlenetau888
- VitaminsPro
- Beautyproductsnstuff
- Vita Shop Smart
- Desertcart Zimbabwe
- Desertcart Albania
- Kardiac Kids
- Goodthingstobuynow

### III. LEGAL STANDARD

**Expedited Discovery**

As expedited discovery requests are generally made to prepare for a preliminary injunction hearing, a decision to grant expedited discovery should be based on "the reasonableness of the request in light of all surrounding circumstances." *Merrill Lynch, Pierce, Fenner & Smith v. O'Connor*, 194 F.R.D. 618, 624 (N.D. Ill. 2000). When it comes to the service of foreign nationals there is a "thumb on the scale weighing against [extensive] discovery." *In re Sheehan*, 48 F.4th 513, 526 (7th Cir. 2022) (internal citations and quotations omitted). While the Court has wide discretion when it comes to discovery, the Plaintiff "must be able to establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted." *Id*. at 526 (internal citations and quotations omitted).

Personal jurisdiction must exist for a court to exercise authority over a party. Personal jurisdiction can be waived and is generally raised by the defendant, not the Court. However, if a lack of personal jurisdiction or improper venue is obvious, a Court may dismiss the suit, but it is generally better to transfer the suit to an appropriate venue or forum. *Spherion Corp. v. Cincinnati Fin. Corp.*, 183 F. Supp. 2d 1052, 1059-060 (N.D. Ill. 2002).

Personal Jurisdiction requires: (1) minimum contacts with the forum state, (2) that the claims arise out of contacts with the forum state; and (3) the maintenance of the lawsuit must not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, (1945). A defendant does not have minimum contacts with a state when they merely operate an interactive website accessible to people in that state. *Illinois v. Hemi Group LLC*, 622 F.3d 754 (7th Cir. 2010). To establish minimum contacts, a defendant must have purposefully exploited the market of the forum state. *Curry v. Revolution Labs.,LLC*,

4

949 F.3d 385, 399-400 (7th Cir. 2020) (citing *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011)). "There is no per se requirement that the defendant especially target the forum in its business activity; it is sufficient that the defendant reasonably could foresee that its product would be sold in the forum." *Id*. at 399-400 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984)). A court in a forum state has personal jurisdiction over defendants in trademark infringement cases when the defendants offer their products for sale in the forum state, send an email confirmation, and ship to that state. *Id*.

**Email Service**

In all cases involving alternative forms of service, a court "must determine whether the alternative method is reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *NYKCool A.B. v. Pac. Int'l Servs., Inc.*, 66 F. Supp. 3d 385, 391 (S.D.N.Y. 2014) (internal quotations omitted).

Fed. R. Civ. P. (hereinafter "FRCP") 4 governs summons. Traditionally, summons are served directly to the individual. FRCP 4(e) governs service on individuals in the United States while FRCP 4(f) governs service on individuals in foreign countries.

> (e) SERVING AN INDIVIDUAL WITHIN A JUDICIAL DISTRICT OF THE UNITED STATES. Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by:
> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made;
> . . . .
> (f) SERVING AN INDIVIDUAL IN A FOREIGN COUNTRY. Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States:
> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

>    (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>    >    (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>    >    (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>    >    (C) unless prohibited by the foreign country's law, by:
>    >    >    (i) delivering a copy of the summons and of the complaint to the individual personally; or
>    >    >    (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>    (3) by other means not prohibited by international agreement, as the court orders.

FRCP 4(e), 4(f). Illinois Supreme Court Rules 11 and 105(b)(1) explicitly authorize service by email. ILL. SUP. R'S 11, 105(b)(1). *Midwest Commer. Funding, LLC v. Kelly (Williams)*, 2023 IL 128260, ¶ 22 (Ill. 2023). Therefore, if a defendant is within the United States, they may be served by email by plaintiffs suing within the state of Illinois under certain circumstances.

However, even if email service is permissible under Illinois rules, email service on foreign nationals may still be inappropriate. International service of process is governed by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters art. 10(a), Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 ("Hague Convention"). Email service was not contemplated by the Hague Convention, so it would fall under the category of "other means" of service under FRCP 4(f)(3). FRCP 4(f)(3) requires that email service not violate federal law, foreign law, or international agreements—including the Hague Convention. *Id*. The Hague Convention did not contemplate email as a form of acceptable service because email did not exist at the time of the Convention. Therefore, the question is whether the Hague Convention proscribes email service by excluding alternative service; if it does, then email service on the international defendant would not comply with FRCP 4(f)(3). Yet, whether the Hague Convention prohibits email service is a matter of dispute and also depends on the country.

The legality of email service depends on multiple factors: whether foreign law proscribes email service, whether the country objects to Article 10(a) of the Convention, and whether the country objects specifically to email service. Article 10(a) of the Hague Convention states: "[p]rovided the State of destination does not object, the present Convention shall not interfere with . . . the freedom to send judicial documents, by postal channels, directly to persons abroad." 20 U.S.T. at 361. Put in simpler terms, if the country objects to Article 10(a), service by postal channels is impermissible.

Courts are divided on whether the Convention's silence on alternative forms of service, such as email, excludes those alternative forms of service. *Compare Luxottica Grp. v. P'ships & Unincorporated Ass'n.*, 391 F. Supp. 3d 816, 825 (N.D. Ill. 2019) *with Parsons v. Shenzen Fest Tech. Co.*, 2021 U.S. Dist. LEXIS 35903 at *4-5 (N.D. Ill. Feb 26, 2021). Courts are also divided on whether "postal channels" encompass email. *Id*. Consequently, some courts have found that emails do not fall under the definition of "postal channels" and, because the Convention's silence as to other forms of service is exclusionary, that email service is impermissible. *Luxottica Grp.*, 391 F. Supp. at 825. Other courts have disagreed, finding that email service falls within the scope of "postal channels." *Elobied v. Baylock*, 299 F.R.D. 105, 108 (E.D. Pa. 2014). *Sulzer Mixpac AG v. Medenstar Indus. Co. Ltd.*, 312 F.R.D. 329, 331-32 (S.D.N.Y. 2015) (collecting cases). However, even the courts that consider email to be within the scope of "postal channels" are divided. *Id*. Some hold that, because email service is encompassed by "postal channels" that a country's objection to service by "postal channels" i.e., an objection to Article 10(a), proscribes postal service and email service equally. *Elobied v. Baylock*, 299 F.R.D. at 108. Others hold that, while email service may be encapsulated by the term "postal channels" a country's objection to service by "postal channels," alone, does not proscribe email service; rather a country must

specifically object to service by email. *Sulzer Mixpac AG v. Medenstar Indus. Co. Ltd.*, 312 F.R.D. at 331-32.

Relevantly, there is a split within this circuit over whether the Hague Convention prevents email service to individuals in the People's Republic of China specifically. The PRC objects to Article 10(a). The majority of district courts in this circuit have found that service by email is acceptable to individuals in the PRC. *E.g. Hangzhou Chic Intelligent Tech. Co. v. P'ships & Unincorporated Ass'n*, (No. 20 C 4806) 2021 U.S. Dist. LEXIS 64064 at *10-11 (N.D. Ill. Apr. 1, 2021). These courts reason that, because email service does not involve physical intrusion into a foreign country, email service does not fall within the scope of "postal channels." *Id*. At least one district court in this circuit has come to the opposite conclusion, finding, because the Hague Convention *could* be extended to email service, that the Convention's restrictions on other service should also be extended to email. *Luxottica Grp.* at 827.

Regardless, the Hague Convention only applies in cases where the physical address of the defendant is known. *NBA Props. v. P'ships & Unincorporated Ass'ns*, 549 F. Supp. 3d 790, 796 (N.D. Ill. 2021) ("The Convention does not apply if the defendant's address is 'not known.'"). However, some courts have found, before accepting "that a defendant's address is 'not known,' [that] the plaintiff must make reasonably diligent efforts to ascertain and verify defendant's mailing address." *Id*. There is no mandatory authority on whether Plaintiffs must undertake "reasonably diligent efforts" before allowing service by email. Some courts have issued email service without this showing while others have not. *Delta Faucet Co. v. Watkins*, 2023 U.S. Dist. LEXIS 52495 at *5 (S.D. Ind. Mar. 27, 2023).

When a plaintiff includes business information in their complaint, but did not look to see if mailing addresses were available or valid, that plaintiff fails to exercise reasonable diligence.

8

While a plaintiff may believe that those addresses are unlikely to be valid, a plaintiff's "bare assertion regarding the reliability of [d]efendant[s'] publicly available address are not a substitute for actual diligence." *Id*.

## IV.   ANALYSIS

Before examining the merits of the motion, as stated above, there is no mandatory authority on the question of whether plaintiffs must show reasonably diligent efforts to discover defendants' physical addresses before a court allows email service. Consequently, this Court must determine whether a plaintiff must show those efforts before authorizing service by email—especially given the Plaintiff's claims here that some of the defendants are located in the PRC; a country that has objected to Article 10(a) of the Hague Convention.

**Email Service Generally**

Service by email in the United States is dependent on state law, while service by email abroad is subject to U.S. law, foreign law, and international agreements—such as the Hague Convention. FRCP 4(e), 4(f). Many of the Courts who have issued rulings on email service for defendants whose physical addresses are unknown have analyzed the question under FRCP 4(f) (service on foreign nationals). However, defendants with unknown addresses are not necessarily foreign defendants—they may actually be within the United States. If a defendant with a known address turns out to reside in the United States, analyzing the appropriateness of email service under FRCP 4(f) would have been inappropriate. Alternatively, the defendants may be in a country that prohibits email service and, likewise, email service under FRCP 4(f) would have been inappropriate. These plausible scenarios can create major procedural issues down the line. While this is a risk any time a Court orders email service, requiring reasonably diligent efforts to discover defendants' addresses should filter out many of these issues.

9

Some courts have not required that plaintiffs show reasonably diligent efforts to uncover defendants' addresses. Beyond increasing the likelihood that one of the scenarios outlined above will occur, that approach also creates a public policy problem.

Service of process, even on defendants whose addresses are known, can be costly and time-consuming. Requiring little to no effort to discover a defendant's address would encourage plaintiffs to stick their head in the sand to avoid discovering those addresses, effectively giving plaintiffs carte blanche to serve all defendants by email—cutting down on the delay and costs ordinarily associated with service. Initially, service by email may sound quick, efficient, and cost-effective; but it may also allow plaintiffs to move for speedy entries of default and default judgments before defendants realize they have been summoned. There is no telling whether an email address that a plaintiff finds is one that is checked regularly by the defendant. Even if it is regularly monitored, an email summons might be mistaken for being a scam email—presuming email auto-filtering does not designate the email as spam.

Additionally, not requiring reasonably diligent efforts would allow some plaintiffs to easily circumvent foreign law, state law, and international agreements by pleading ignorance of a defendant's location when the state, foreign, or international law in the defendant's location proscribes email service. As illustrated by the multiple splits that exist over the interpretation of the Hague Convention, it would be easier for a plaintiff to exercise no effort to discover a defendant's address if they know that it may result in complex litigation over service.

For all these reasons, this Court will only authorize email service after a plaintiff shows that they have exercised reasonably diligent efforts to find a defendant's physical address without success.

**Expedited Discovery and Email Service in This Case**

Now the Court turns to the merits of Brainlife's motion. The Plaintiff's reason for seeking an expedited discovery order is that they fear the offshore merchants will close down their ecommerce stores upon seeing this lawsuit. Expedited discovery would allow the Plaintiff to receive financial and account information from third-party websites to discover their real identities or at least prevent them from vanishing.

However, at the hearing on the motion, the Court observed that many of the defendants—the manufacturers—were established companies within the United States and did not appear to be at any risk of vanishing. The Court ordered the Plaintiff to file a supplement to the motion indicating which defendants the Plaintiff had physical addresses for and which ones the Plaintiff did not have addresses for. Also, that the Plaintiff detail the efforts they have taken to locate the defendants.

Now, the Court has reviewed the supplement and the Plaintiff's efforts. The Court finds that expedited discovery is reasonable for some of the defendants in light of the significant risk in these cases that certain merchants may vanish at the signs of this lawsuit. Without accurate information provided by third-parties, it would be extremely difficult for the Plaintiff to find valid email address associated with the Defendants that are reasonably calculated to give them notice. There is a far higher likelihood that a defendant will receive notice of this lawsuit if it is delivered to the email that they have primarily used in their business operations. For these reasons, the Court finds that email service for some of the defendants through the primary email they use for ecommerce is reasonably calculated to apprise them of the pendency of this action. Additionally, the Plaintiff presented sufficient evidence that each of the Defendants—including

the Defendants the Plaintiff seeks to serve via email—offers to ship and will ship their products to the State of Illinois, establishing sufficient personal jurisdiction.

Accordingly, the Court will grant the motion for expedited discovery and service of process by email solely for the relevant defendants. Service by email and expedited discovery as to all other defendants will be denied, but denied without prejudice—in case the Plaintiff discovers that the physical address for one or more of the other Defendants is invalid. Given the individuals behind these accounts are unknown at this time, the Court finds that utilizing service through information provided to their payment platforms is the best method, reasonably calculated to give them notice of the pendency of this action. If, through this expedited discovery process, the Plaintiff discovers the physical addresses for any of these Defendants, the Plaintiff should arrange for service to be carried out in compliance with the relevant federal rule of civil procedure.

While the Court was reviewing the Plaintiff's supplement, the Plaintiff—without the leave of this Court—requested and was issued summonses for all defendants, including those who the Plaintiff only had email information for. (Docs. 60, 62–65, 69, 72–74, 76–78, 80–81, 84, 86–87). Most of these summonses included placeholder emails that were clearly erroneous. However, some of these summonses included the defendants' correct email addresses, with no corresponding physical address. (Doc. 60, 76–78, 86). Though the Court has ultimately found that the Plaintiff has exercised reasonably diligent efforts and authorized email service, the Plaintiff's decision to request these summons before the Court had an opportunity to rule on the matter is concerning. The Court understands that the Plaintiff may have done this out of a desire to move this case along, however, that is not an excusable reason to act without authorization, especially when the matter is pending disposition. The Plaintiff may have just opened the door to

procedural challenges later on. It would be unwise for the Plaintiff to act without authorization again.

## V.      CONCLUSION

For the reasons outlined above, the Court **GRANTS in part** and **DENIES in part without prejudice** the Plaintiff's *Ex Parte* Motion for Expedited Discovery and Email Service. (Doc. 12). Accordingly, expedited discovery and email service are authorized for the following defendants:

- HHFS-Online
- Healthplusliving
- Wanda's Health and Beauty
- Daily Deals Sales
- Tiendamia
- Todayslifestlenetau888
- VitaminsPro
- Beautyproductsnstuff
- Vita Shop Smart
- Desertcart Zimbabwe
- Desertcart Albania
- Kardiac Kids
- Goodthingstobuynow

Additionally, when a pending matter is before the Court, the Plaintiff is **ADVISED** not to initiate actions that require this Court's leave without authorization.

**IT IS SO ORDERED.**
**DATED:  June 20, 2024**

*s/ J. Phil Gilbert*
**J. PHIL GILBERT**
**DISTRICT JUDGE**